UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
New Haven Division

| | | |
|---|---|---|
| HERMANN VANECK | : | CHAPTER 7 |
| Debtor, | : | CASE NO: 15 – 30014 |
| | | |
| IN RE: "DLJ MORTGAGE CAPITAL, INC.," | : | |
| Nominee Movant, | | |
| | | |
| Vs. | : | ECF No: 12, 22 |
| | | |
| HERMANN VANECK, DEBTOR, and | : | |
| KARA S. RESCIA, TRUSTEE | | |
| Respondents. | : | FEBRUARY 26, 2015 |

MOTION FOR RECONSIDERATION
AND RE-ARGUMENT

HERMANN VANECK, the Petitioner, and a respondent in the above-captioned Motion Proceeding brought by counsel for the fictitious corporation "DLJ Mortgage Capital Inc." ["DLJ"], hereby respectfully Motions this Court to vacate and set aside its *Amended Order Granting DLJ Mortgage Capital Inc., motion for equitable relief and in rem Order*, dated by this Court on 13 February 2015 [Manning, J.], which apparently in turn was a *sua sponte* revision of a previous Order crafted by Linda St. Pierre, counsel for the fictitious corporation "DLJ." Good grounds exist for this Motion, in furtherance of which Petitioner represents as follows:

A. **Movant "DLJ" failed to follow the explicit Service requirements stated by this Court in its Order dated 13 January 2015 [ECF # 14].**

1. The Court, in granting the Motion for shortened time for Hearing on the matter, issued the following explicit Instruction:

"**ORDERED** that, on or before **January 14, 2015**, Movant shall serve this order, the Substantive Motion and the proposed order thereon upon [all appropriate notice parties] and the United States trustee by this Court's CM/ECF system (if applicable, otherwise by overnight mail or overnight delivery service)."

2.  To no surprise, adverse counsel Linda St. Pierre consciously did not Serve any of the documents including the Notice of the Shortened-time Hearing to Petitioner as explicitly required by this Court.

3.  Petitioner only found out about the Hearing Date by his own research.

4.  A massive snowstorm resulted in the Court moving items including this Hearing forward by one week. Petitioner learned of this by telephone discussion with the Court Deputy.

5.  Subsequently, Movant by counsel [Linda St. Pierre] sent copies of all the requisite Moving Papers, Notice of the 28 January 2015 Hearing, and this Court's Order of 13 January to Petitioner by a courier delivery service, "UPS Next Day Air Letter Envelope." A copy of the UPS Envelope is appended as Petitioner's **Exhibit "A."** The envelope contains the "tracking number" 1Z 47E 5E3 01 9597 1241.

6.  Petitioner accessed the UPS Tracking System and obtained the data for the shipment correlated to this tracking number. The print-out of the Tracking is appended as Petitioner's **Exhibit "B."**

7.  **Exhibit "B" indicates that the "overnight envelope" did not even ship until 01/26/2015 and was not delivered until 01/28/2015, at 1:06 p.m., <u>after</u> the scheduled Hearing date and time.**

2

8. It becomes apparent that Movant by counsel Linda St. Pierre, Esq. deliberately, willfully and consciously did not send out the required Notice until the very eve of the Hearing, and that it did not arrive, and was calculated not to arrive, until *after* the Hearing would have taken place.

9. Movant seeks equitable relief from this Court for what it various claims are "rights," or alternatively "interests," to a certain Property in Middlesex county [ 24 Ebony Lane, Ivoryton, CT, hereinafter "subject Property"]. Without even beginning to get into the minutiae of the Movant's representations, all of which are untruthful and distorted representations, Petitioner notes that Movant's basis for its filings are "equitable relief." Yet, it is long-standing black-letter law that "he who seeks equity must have done equity," and that those who, by their previous acts, would seek to obtain unfair advantage, shall be barred from relief in equity. "The governing principle is that whenever a party who as *actor*, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*, the court will refuse to interfere in his behalf, to acknowledge his right, or to award him any remedy." *Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245.*

10. As a preliminary matter, Movant has not "done equity," and has sought to "obtain unfair advantage," by refusing to obey this Court's very strict Instructions as to Service of the various Moving papers, Proposed Order, and Order setting Hearing Date. The willful refusal to abide by this Court's strict and explicit Instructions would bar Movant from any equitable relief sought in this Court.

11. The Court has not considered Movant's willful misconduct in its grant of Movant's Proposed Order (which apparently the Court subsequently amended *sua sponte*).

3

Wherefore, Reconsideration of this Court's Order of 13 February 2015 granting "equitable relief" to Movant is appropriate, in the circumstances that pertain.

12. Indeed, it is Petitioner's position that this Movant is not entitled to any relief, as it has sought to obtain unfair advantage, a practice so roundly condemned by the U.S. Supreme Court in *Keystone Driller Co. v General Excavator Co.* [Id.].

**B. There is ample parole evidence that "DLJ" is a phantom, or sham, Movant.**

13. "DLJ" is a name that has no definable corporeal existence attached. As such, it qualifies as a "sham corporation," crafted for the explicit purpose of perpetrating deceits upon the Courts. "DLJ" seeks relief in various Courts upon bald assertions of "ownership" of various Notes and other Instruments, when in actuality "DLJ" never paid any funds for same, is not classically aggrieved, and has no true ability to seek redress. It is a name without Standing.

14. Ample parole evidence exists to have this Court view the bald assertions of "DLJ" and its counsel with skepticism. In the matter at Bar, the Court, through its automated system for sending Notices – which are sent with the return address of Petitioner, not the Court itself - the actual Notice mailed by the Court to "DLJ" of this Court's Amended Order was returned to debtor unopened, and marked by the postal service as: *Attempted – not known; unable to forward.*

**C. Although nominally "DLJ" sits inside the Credit Suisse offices at 11 Madison Ave, NY, it has no taxable personal property listed with the City of New York, and owns No desk, no chair, no filing cabinet, no telephone, or any other indicia of a bona-fide business entity. "DLJ" paid nothing for any "Note" or other claim of Petitioner.**

15. "DLJ" as a creature flowed from the purchase of Credit Suisse Group A.G., Uetlibergstrasse 231, Zurich CH-8070, ["Credit Suisse (Zurich) A.G."], by its United States

4

indirect subsidiary, "Credit Suisse (USA), Inc.," of the firm "Donaldson Lufkin Jenrette," a Wall Street "house" that engaged in Alt-A mortgage repackaging, a process known generally as "securitization." As part of that purchase, five managers demanded, as a condition of transferring to Credit Suisse, the countenance to form "DLJ" as a paper or sham corporation in order to carry out, for their own account, predatory foreclosures of Notes that were fully paid, but not stamped "Paid." Such Notes were commonplace on Wall Street as a result of securitization insurers paying "calls," or claims on Notes contained within tranches of securitized pools.

16.     Petitioner learned that his "Note" relating to 24 Ebony Lane, whatever its dubious provenance, was Paid by the Radian Insurance Group, subsequent to a claim advanced apparently by the Wells Fargo Bank, when he was contacted by an Investigator of "Radian". The suspicions of "Radian" had been aroused by the large number of claims made on its Note insurance policies, and in a belated effort to determine the credentials of these past claims, "Radian" had its Investigators, retired police detectives, contact the original Obligors on those Notes placed for insurance payment to determine if the claims that had been made by Wall Street houses were fraudulent, or otherwise contained irregularities that would lead to a put-back claim by Radian for monies paid out on those claims.

17.     "Radian" sold its insurance policies with a non-subrogation clause, so that the insured claimant [apparently Wells Fargo Bank] retained the physical Note, although paid.

18.     Petitioner, as debtor, has not had his Note credited with the insurance payout of all Principal and Interest.

19.     "DLJ" is a classic phantom, or "sham," entity pretending to be a business corporation. The phantom entity has no corporeal existence. It owns no personal property,

neither in New York City nor anywhere else. The persons involved in its crafting sit in offices inside Credit Suisse headquarters at 11 Madison Avenue, New York, NY.

20. "DLJ" paid nothing for the Petitioner's "Note." "DLJ" has experienced no loss, no risk of loss, has no aggrievement that can be addressed by this Court nor any other Court, and there is no act or failure to act that would have created an adverse result for "DLJ."

21. "DLJ" claims to have obtained the "Note" from the claimed entity "GRP Loan, LLC." But "GRP Loan, LLC" is yet another sham corporation, this one crafted by Kristin Tess of Westchester County, New York. Kristin Tess ["Tess"] operated out of an "office" at 445 Hamilton Ave, White Plains NY; there was no name on the building Tenant Board, and the "office," found on the 8th floor, was behind a locked door with no name and no identifying mark, and looked for all the world like a janitor's closet. "Tess" was engaged in mortgage-foreclosure fraud and other financial crimes, analogous to those of "DLJ." "Tess" fled the jurisdiction when the cops came calling, abandoning the operation, and "DLJ" obtained the residuals of that operation, a process known in the industry as "bushel-basketing."

22. The authority of "GRP Loan" to do business was REVOKED by the State of New York.

**D.    Credit Suisse is a convicted criminal enterprise, having admitted to the U.S. Dept. of Justice in its Guilty Plea to felony fraud charges that it fashioned, used, and crafted "Sham Entities."**

23. "Credit Suisse" itself, the nominal patron of "DLJ," and the address wherein "DLJ" claims to be, is a convicted felony criminal enterprise, having entered a plea of GUILTY to felony fraud of the Government of the United States in crafting and executing a scheme of fraud wherein wealthy individuals could use the services proffered by "Credit Suisse" to criminally evade the legal taxes of the United States. The Guilty Plea was to U.S. charges that

Credit Suisse "engaged in an extensive and wide- ranging conspiracy to help U.S. taxpayers evade taxes." *United States of America v. Credit Suisse AG.*, CRIMINAL No. 1:14-CR-188 [U.S. E. Distr. Va.]. See at: Petitioner's **Exhibit "C"**. [hereinafter: "the Plea"].

24. The Court's attention is directed to the paragraphs numbers 21-31 in "The Plea," captioned "**THE USE OF SHAM ENTITIES.**"

25. In particular, at para. 25 of "the Plea," Credit Suisse admits that "Credit Suisse sought to create the appearance that the structures were legitimate entities..," when in fact the sham entities were designed for the specific purposes of advancing fraud.

26. The Court may be rightly skeptical of claims and bald allegations advanced by the Credit Suisse creature "DLJ" herein, as this construct is part of a continuing criminal enterprise.

27. The misconduct of Credit Suisse is not confined to matters in New York. By Memoranda of Decisions flowing from the tangled case of *In re Yellowstone Mountain Club*, Bankruptcy No. 08-61570-11. Adversary No. 09-00014., the Bankruptcy Court for the District of Montana [ Kirscher, J.] made a Finding that Credit Suisse was "an international predator Bank" and stood before the Court "with unclean hands." As a penalty, the Court subordinated a $232 million mortgage claim to a last-place position as an unsecured non-priority claim, under the principles of equitable subordination.

28. The Court may be mindful that the Credit-Suisse constellation of entities, including the bank and its sham entities, have been repeatedly sued, continue to be sued, and have been condemned to damages, in the billions of dollars, by both the United States and various Attorneys-General, including that of New York State, and the State of New Jersey [*See: Hoffman v. Credit Suisse Securities (USA) LLC et al.*, in the Superior Court of New Jersey, Chancery Division, Mercer County (2013)]. The fraud alleged involved $10 Billion dollars.

E. **Good Cause exists for the Court's Order to be vacated or set aside, or in the alternative for the Motion by "DLJ" for stay-relief to be re-argued.**

29. The representations made by "DLJ" and by counsel for "DLJ," Linda St. Pierre, were not truthful. Taking only one small sliver of the untruthful representations, Movant claims that petitioner has filed this Petition as a "tenth bankruptcy petition." [See: ¶7, *Motion*, Dkt 12]. That is a grotesquely untruthful assertion. The Court has relied upon the untruthful and grotesque assertions of Movant by counsel, to its detriment, and to the detriment of Petitioner.

30. The Movant "DLJ" by counsel St. Pierre has recited a number of other cases, including those of persons or entities over which Petitioner has no control and which apparently have nothing to do with the controversy at Bar, as "evidence" of its assertions made to this Tribunal, wherein St. Pierre asserts that Petitioner seeks "to delay, hinder or defraud" DLJ. No evidence can be proffered by Movant to substantiate that claim. Nonetheless, the Court was persuaded, in the absence of Petitioner, by Movant's bald and untruthful assertions.

31. Indeed, as shall be demonstrated by separate Memorandum, it is "DLJ" that has undertaken substantial efforts to both defraud the Courts and Petitioner.

32. Although "DLJ" claims to have obtained a "Judgment" in the State Court of Middlesex County as respects the subject Property, in fact this is not truthful, and what it proffers as a "Judgment" is a fraud on the Court. As but one indicium of "DLJ"'s misconduct, "DLJ" proceeded with its various Motions in the State Court matter when it was not a creditor, and while the Property was itself a listed asset of a Petitioning Debtor before the United States Bankruptcy Court, Middle District of Florida [Dkt. 6:10-bk-13487]. Despite actual knowledge of that Docket, and despite not having a relief from stay (to which it was not in any event entitled), *nonetheless* "DLJ" proceeded with its Motions to Open the State Court matter, and without Notice or Service upon the Property Owner. From the fruits of this cute little fraud,

"DLJ" now seeks to engage the judicial machinery of this Court to enrich itself at the rights, and expenses, of the real owners and creditors of the Property.

33. The willful and conscious acts of "DLJ," done in contempt of the Court's Statutory Prohibitions, demonstrate Unclean Hands, and act as a complete bar to "DLJ" coming before this Court with its requests for equitable relief.

**F. Good cause exists for Petitioner to have not been present in Court on February 4th.**

34. The Court by clerk moved the previously-calendared Hearing Date [that being the date to which petitioner was not Served by "DLJ," despite the Court's specific Orders] over by one week due to impassable roads. On the re-scheduled Hearing Date, Petitioner was buried by yet another major snowfall, and faced a driveway containing several feet of snow, all requiring shoveling.

35. Petitioner by telephone informed the Court that he would be physically unable to attend at Court (notwithstanding that :DLJ" had not Noticed Petitioner of the Hearing Date, as required by Rule), as the snowfall precluded passage out of the house. Further, the town plows had packed a dense wall of solid snow some five feet deep at the entranceway to the driveway. Petitioner lives some thirty (30) miles for the Court, in a rural area, in which there is no public transit. Other than walking, Petitioner had no realistic way to attend Court.

36. The extraordinary weather conditions of February, coupled with Petitioner being elderly and in poor health, weigh heavily in favor of Continuance of matters.

37. Movant "DLJ" could show no prejudice from continuing any Hearing, as Movant itself stood with Unclean Hands, having fraudulently obtained its pseudo-Judgment from the State Court only by contemptuously flouting the automatic-stay of the Florida Bankruptcy Court.

Further, Movant has, and never has had, any funds at risk in the matter in controversy, having paid nothing for the "Note," which itself had been fully discharged by proceeds of insurance. WHEREFORE, the Petitioner requests this Court vacate and set aside its Order of 13 February 2015, and in the event that the Court finds that further hearing is required on the subject matter, to set the "DLJ Motion," Docket Item 12, down for re-argument.

BY THE PETITIONER,

HERMANN VANECK
24 Ebony Lane
Ivoryton CT 06442
860-514-5902

Certificate of Service
Service is hereby certified by deposit into the
United States mails, first-class postage prepaid,
Or by hand delivery,
Or by electronic service, addressed to:

Kara S. Rescia, Esq.
Chapter 7 Trustee
200 North Main Street, East 14
East Longmeadow, MA 01028

U.S. Trustee
Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

Linda St. Pierre, Esq.
Hunt, Leibert Jacobson, P.C.
50 Weston Street
Hartford, CT 06120

On 27 February 2015:

_____
Debtor