UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:                          .    Case No. 15-30014 (JAM)
                                .
HERMANN JAN VANECK,             .
                                .    157 Church Street
                                .    New Haven, CT 06510
          Debtor.              .
                                .    March 25, 2015
. . . . . . . . . . . . ..           11:25 a.m.


TRANSCRIPT OF MOTION TO RECONSIDER
BEFORE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE


APPEARANCES:

For the Debtor:            HERMANN JAN VANECK, Pro Se
                           24 Ebony Lane
                           Ivoryton, CT 06442

For Creditor DLJ           Hunt Leibert Jacobson, P.C.
Mortgage Capital, Inc.:    By:  KEN POLLOCK, ESQ.
                           50 Weston Street
                           Hartford, CT 06120


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609)586-2311      Fax No. (609) 587-3599**

1           COURTROOM DEPUTY:  15-30014, Hermann Vaneck.

2           THE COURT:  Good morning.  Mr. Vaneck?

3           MR. POLLOCK:  No, Your Honor.  I'm Attorney Ken

4   Pollock on behalf of DLJ Mortgage Capital.

5           THE COURT:  Oh.  How are you, sir?  Sorry.  Mr.

6   Vaneck.

7           MR. VANECK:  Yes.

8           THE COURT:  Would you please come to the table and

9   state your name for the record into the microphone?

10          MR. VANECK:  (Indaudible).

11          THE COURT:  Yes, please, sir.  Thank you.

12          MR. VANECK:  Hermann Vaneck.

13          THE COURT:  Good morning.

14          MR. VANECK:  Good morning.

15          THE COURT:  I looked at all the papers that were

16  filed by Mr. Vaneck and by your office, counsel, on the motion

17  to reconsider, and I do have a question for you about something

18  that Mr. Vaneck pointed out in his papers.  The -- what I found

19  or -- and so you need -- if you would, you could maybe explain

20  this to me, on January 13th an order was entered scheduling a

21  hearing and shortening notice on a hearing for the motion for

22  in rem relief from stay and the order, which was ECF 15 in the

23  case, stated that on or before January 14th, 2015 movant shall

24  serve this order, the substantive motion and the proposed order

25  thereon upon all appropriate notice parties and the United

1  States Trustee by CM/ECF or, if applicable, otherwise by

2  overnight mail or overnight delivery service.  Then I got --

3  that was entered on the 13th.

4        On the same day a hearing date certification was

5  filed by your office indicating that these were sent -- that

6  the motion for in rem relief, copies of proposed order, a copy

7  of the order scheduling hearing and shortening notice and a

8  copy of the notice of hearing and hearing instructions was

9  served by first class mail to Hermann Vaneck.

10       And then Mr. Vaneck's motion indicates that he didn't

11  receive -- that -- it indicates two things, that there was a

12  UPS delivery -- excuse me, a UPS receipt showing that the

13  package was next day air to him, but that that wasn't shipped

14  until January 26th and it wasn't received by him until January

15  28th.  So if that's the case, which on the record I have before

16  me appears to be the case, then service of the hearing and the

17  motion for in rem relief was not timely made.

18       MR. POLLOCK:  Your Honor, we do acknowledge in our

19  objection that we made the mistake.  We did send it first class

20  mail instead of overnight mail.  However, we also feel that

21  there was absolutely no prejudice to Mr. Vaneck,

22  notwithstanding our error.  He had notice.  He filed an

23  objection.

24       THE COURT:  He didn't have notice though until the

25  28th, the day of the hearing.

1          MR. POLLOCK:  He had -- he didn't get notice, Your

2    Honor, I -- via first -- via overnight delivery from us, but he

3    had to have had actual knowledge of the hearing date because he

4    filed an objection to the motion on January 16th.

5          THE COURT:  I understand that, but unfortunately the

6    service was not properly made.

7          MR. POLLOCK:  And we acknowledge that, Your Honor.

8    Our objection does acknowledge that fact, and we feel that it

9    still -- we feel that it's a de minimis error because the

10   hearing wasn't immediate.  The hearing was scheduled several --

11   a couple of weeks after --

12         THE COURT:  Well, it's wasn't --

13         MR. POLLOCK:  -- the order.

14         THE COURT:  Yes, it was two weeks, but when you seek

15   expedited relief from the Court, the Court requires expedited

16   service.

17         MR. POLLOCK:  Understood, Your Honor.

18         THE COURT:  But that didn't happen.

19         MR. POLLOCK:  Correct, Your Honor.  We're not hiding

20   --

21         THE COURT:  Okay.

22         MR. POLLOCK:  -- that.  We're not trying to hide

23   that.

24         THE COURT:  I'm not saying you are.  I'm not --

25   that's not what I'm saying at all.  I'm just -- it -- okay.  I

1 understand your point.  So you're saying that even though

2 service was not made in accordance with the order, scheduling

3 the hearing and shortening notice, that there's no prejudice to

4 Mr. Vaneck.  That's your argument.

5         MR. POLLOCK:  That is exactly our argument, Your

6 Honor.

7         THE COURT:  And that there's nothing for this Court

8 to reconsider because of that.

9         MR. POLLOCK:  That is correct, Your Honor.

10         THE COURT:  Okay.  Now, what about the other issues

11 that Mr. Vaneck has raised in his motion for re-argument about

12 that DLJ is a phantom entity and things of that nature?

13         MR. POLLOCK:  Again, Your Honor, our objection

14 addresses all those concerns.  DLJ has been adjudicated both in

15 the Connecticut State Court and in prior bankruptcy court to be

16 the proper party.  That issue is res judicata and --

17         THE COURT:  In what case?

18         MR. POLLOCK:  Well, in the underlying foreclosure,

19 which ended up being, I believe DLJ versus Vaneck, and I'm not

20 sure which bankruptcy filing because there were more than one.

21 I believe that -- I don't know which one, Your Honor.

22         THE COURT:  Well, it may be res --

23         MR. POLLOCK:  I apologize.

24         THE COURT:  -- judicata in that case, but I don't

25 know -- have you -- I don't believe your motion for relief from

1 | stay -- and I'm not saying it should have, I'm just asking,

2 | anything that was filed in this court didn't refer to that

3 | decision of the superior court, did it?

4 |       MR. POLLOCK:  No, Your Honor.

5 |       THE COURT:  Okay.  Okay.  All right.  Well, do you

6 | have anything other -- anything else you'd like to say before I

7 | let Mr. Vaneck speak?

8 |       MR. POLLOCK:  Nothing, Your Honor.

9 |       THE COURT:  Okay.

10 |       MR. POLLOCK:  I'll just see if I need to rebut

11 | anything.

12 |       THE COURT:  Okay.  Thank you.  Mr. Vaneck.

13 |       MR. VANECK:  May I ask the Court's permission to

14 | address you sitting down?

15 |       THE COURT:  Certainly.

16 |       MR. VANECK:  I'm not feeling well.

17 |       THE COURT:  That's fine, sir.  Go right ahead.

18 |       MR. VANECK:  Thank you.  I've had the flu for two

19 | weeks.  Well, as the Court has accurately pointed out, an order

20 | was issued with very specific instructions, and the movant

21 | stated that the Hunt Leibert law firm seems to take the view

22 | that that's an optional extra, and I would argue that this is

23 | -- the order is not there as a pretty please.  It's not there,

24 | well, maybe if you want to do, it's okay, but if you do it some

25 | other way that's okay.

1      It's an order and the order has to be followed

2  explicitly and if it doesn't then the reputation of the Court

3  starts to suffer, the line to the public, because courts are --

4  the Court issues an order, the order either gets followed or

5  you're not entitled to your relief, whatever that relief might

6  be, and that's perfectly straightforward, and they didn't.

7      And the question then arises, well, why does this get

8  sent on the 26th and arrive in the afternoon of the 28th and

9  left out on the snow bank out on the street because nobody can

10  get in?  That was the day of that three-foot snowstorm.

11      THE COURT:  I do remember that.

12      MR. VANECK:  A horrendous -- one of many horrendous

13  snowstorms.  If it arrives at 1:06 in the afternoon and the

14  Court has said the order -- the hearing is scheduled for ten

15  o'clock in the morning and then by definition there's no

16  service.

17      So we then have to ask ourselves, well, if they're

18  two weeks late and they say they inadvertently discovered it

19  two weeks late, why is no affirmative statement being made to

20  the Court, sorry, we made an error here?  We'd like --

21      THE COURT:  Well, they did say that.

22      MR. VANECK:  Well --

23      THE COURT:  But anyway, go ahead.  I don't --

24      MR. VANECK:  Not with the service.  All right.

25      THE COURT:  I understand.

1          MR. VANECK:  All right.  Now, the next issue is we

2     have Document Number 16, which the Court has also referenced,

3     which is a hearing date certification signed off by the Hunt

4     Leibert law firm, and that makes a series of statements,

5     essentially saying that although there seems to be some

6     discrepancy as to who got mailed what, but it makes a claim

7     that something was mailed to me on the 13th of January.  That

8     also isn't true.  That didn't happen.  So the certification

9     itself is untruthful.

10          THE COURT:  Well, how do you know that that's not

11     true because --

12          MR. VANECK:  Yeah, there is no receipt.  Nothing

13     shows up.

14          THE COURT:  Well, in mail there doesn't have to be a

15     receipt.

16          MR. VANECK:  Well, all right.  Then let's let Linda

17     St. Pierre come in and make an affidavit under oath or a

18     declaration under oath, however the Court wants to do it,

19     saying that, in fact, she did that on the 13th because, absent

20     some affirmative declaration that she did that, I'm looking the

21     Court straight in the eye and saying, she didn't.  All right.

22          THE COURT:  Well, that -- okay.  Go ahead.  But --

23          MR. VANECK:  All right.

24          THE COURT:  I'm not persuaded by that argument, Mr.

25     Vaneck, but go ahead.

1        MR. VANECK:  Okay.  Well, and that will be it, you

2   know, and we can make that another argument for another day

3   because I'm not sure that that's the issue.

4        Now, the next claim that's been set forth is, well,

5   there isn't any prejudice because, you know, the debtor filed

6   something on the 16th, objection.  Well, but, you know, the

7   problem there is that this is a conflating of two separate

8   issues.  There was a motion filed or a proposed motion filed

9   and I think that date was the -- what was that, the 12th or the

10  -- that proposal that Hunt Leibert wanted to come into court,

11  that certainly showed up.  The 16th is in response to that, but

12  there's no hearing date attached to that.  There's no order

13  attached to that.  There's nothing attached.  That's just a pro

14  forma suggestion saying they want to come into court.  That's

15  not responsive to their claim of having made a service on the

16  13th.  That's responsive -- that filing is responsive to the

17  blank paper, a proposed motion that was filed previously.

18       So let's not say that I'm in receipt of some kind of

19  notice or -- whether formally or informally or indirectly or by

20  the telegraph, that there's going to be a hearing.  That has

21  never happened.  So that representation isn't truthful.

22       Now, the next set of problems is that what these

23  people write, it tends to play fast and loose with the truth

24  and that really has me concerned.  You know, the Hunt Leibert

25  law firm has represented a whole series of people or claim to

represent a whole series of people.  It's not even clear that
some of those people even know that he represents them.  This
has been going on for a decade, perhaps more than a decade.  I
guess it's 13 years.  And the claim is made -- for example, you
have the statement, the -- and this is in the document that's
titled objection, where the claim is made, well, a judgment of
foreclosure was entered on, what is it, June 10th, 2002.  Well,
okay, you know, if you were to go back and look at the docket
sheet of the state court case on which that representation is
being made, yeah, okay, Judge Arena (phonetic) did write that
in there, but let's remember how that took place.

The Hunt Leibert law firm, immediately after having
commenced the case in the name of a completely different
creditor, and it's not these DLJ people, it's somebody else,
proceeds to then provide service and proof of service,
certification of service to the Court to a completely different
address in a different village, to a non-existent, and I
emphasize non-existent, P.O. Box in a completely different
village five miles down the road, six miles down the road from
my house.  Not my P.O. Box.  Not my address.  Not my house.
Not even in Ivoryton.

So based on a series of papers filed by Hunt Leibert,
none of which were truthful, all of which were made to this
non-existent address, they then come into court and say, well,
give us a default, the Court signs off on it, and now give us a

1 judgment and the Court signs off on it.  Now, I have to go hire

2 counsel for $1,600 to go back to court, have that overturned,

3 and the way I do that is I go to that other station and I get

4 the postmaster to sign an affidavit saying that the address

5 doesn't exist and there is no such P.O. Box in their building,

6 and then based on that affidavit the judge says, well, you

7 know, if you're sending stuff to places where the debtor has no

8 reasonable chance of ever finding out about it, why should we

9 entertain you with these papers.  And so then all those papers

10 are then vacated.  They're all voided out of the court system.

11        Now, they don't bother telling you that.  So when

12 they come into court here and they say, well, over there in the

13 state court system we got a judgment against this fellow,

14 right, the truth of it is they didn't because the judgment gets

15 overturned.  Why?  Because of falsifications being done by the

16 Hunt Leibert law firm, and this has gone for, you know, a

17 business end of a decade.  It never ends with these people.

18        Now, the representation is made that DLJ somehow has

19 something, some judgment in the state court.  DLJ has no

20 judgment in the state court.  That's absurd.  There's no

21 foreclosure judgment in the state court in favor of DLJ today

22 as we sit, all right.  Now, you can make the claim that there

23 is, but there isn't.

24        The next thing that happens is subsequent to -- the

25 next thing that they make a claim is that they say, well, he

1 abuses the bankruptcy system.  He's been in here on 10

2 different petitions.  Right.  Did you -- did the Court pick

3 that up?

4          THE COURT:  Yes.

5          MR. VANECK:  Right.  That's not truthful.  They're

6 just double counting and triple counting.  They're saying that,

7 well, all right, a petition got converted from 13 to seven or

8 seven to 13 or back and forth, well, why don't we just count

9 that twice.  All right.  Why don't we go ahead and count an

10 adversary proceeding, consider that to be a petition.  You

11 know, none of those petitions had anything to do with these

12 people anyway.

13          These people did not show up in a state court action

14 until a motion to substitute party was filed on March 25th,

15 2010, and that motion to substitute party, albeit improperly

16 filed, was granted by the state court on 4/15/2010.

17          Now the claim is made that they proceeded to obtain a

18 judgment and see foreclosure in a state court case.  That claim

19 was made against the property that I -- I presume against me,

20 although it's not clear whether that -- there's a money

21 judgment.  They sue for money judgment, but then it gets a

22 little big confused because, well, do we really want the money

23 or do we want the property and you get into these -- this

24 bizarre fluxing of concepts.  It's a sliding of these concepts

25 that keeps going on, but that is docketed on 7/01/2010.  Well,

1  I didn't even own the property at that point, you know.  I mean

2  another person had owned the property.  The property had been

3  sold months before, long before these people show up on the

4  doorstep.

5          So they're busy suing against the property, making a

6  claim that -- you know, against me.  Well, the only claim they

7  could possibly be making against me is a money claim.  They

8  can't make a property claim against me because I'm not the

9  party anymore.

10          So meanwhile it now turns out that that property, by

11  an another ironic twist of faith, right, that property, the

12  owner of that, was in a bankruptcy court down in Florida on

13  7/1, so when they arrived, when Hunt Leibert law firm -- and

14  apparently DLJ was noticed on that -- when the Hunt Leibert law

15  firm sails into the state court and says, well, go ahead and

16  give us an in rem judgment against the property, as well as a

17  money judgment against Mr. Vaneck, well, the part about Mr.

18  Vaneck while we -- that obviously we can -- that part you can

19  contest outside of it, but they certainly don't have any right

20  to do anything with this property because in the first place I

21  don't own it.  In the second place, the person who does own it

22  is sitting in front of the bankruptcy court and they don't have

23  a stay relief.

24          THE COURT:  Okay.  Hold on a second now.  Are you

25  talking about 24 Ebony Lane, Ivoryton, Connecticut?

1             MR. VANECK:  Yes.

2             THE COURT:  All right.  So you owned it at one point

3   and you --

4             MR. VANECK:  Yes.

5             THE COURT:  -- no longer owned it as of what day?

6             MR. VANECK:  I --

7             THE COURT:  Sometime in 2010?

8             MR. VANECK:  I think it was March, yeah.

9             THE COURT:  Okay.  And you sold it to someone, is

10  that --

11            MR. VANECK:  That's correct.

12            THE COURT:  And you received proceeds from the sale

13  of that property?

14            MR. VANECK:  That's correct.

15            THE COURT:  Okay.  And when you were in the house --

16  and, I'm sorry, and you're still living at that address even

17  though you --

18            MR. VANECK:  That's --

19            THE COURT:  -- don't own it, is that correct?

20            MR. VANECK:  That is correct.

21            THE COURT:  Okay.  Are you paying rent?

22            MR. VANECK:  I don't have the lease.

23            THE COURT:  I don't know what that means.  That's not

24  --

25            MR. VANECK:  Well, the property --

1           THE COURT:  -- an answer to my question.  My question

2   is --

3           MR. VANECK:  I don't pay --

4           THE COURT:  -- are you paying rent?

5           MR. VANECK:  No, I don't pay anything.  I'm -- the

6   wife has the lease.

7           THE COURT:  Who's the wife?  Your wife?

8           MR. VANECK:  My wife.  My wife, yes.

9           THE COURT:  Okay.  So you and your wife live at 24

10  Ebony Lane and she has a lease with who?

11          MR. VANECK:  She has a lease with the property owner.

12          THE COURT:  And who is the property owner?

13          MR. VANECK:  The property owner is -- it is known as

14  the Adams Irrevocable Trust.

15          THE COURT:  Okay.  And who -- those are relatives of

16  yours, the Adams Irrevocable Trust?

17          MR. VANECK:  No.

18          THE COURT:  Well, how do you know -- how did you

19  enter into an agreement with them to lease the property then?

20          MR. VANECK:  I didn't.  My wife did.

21          THE COURT:  I'm sorry.  How did your wife enter into

22  it?  Because you sold them the property?

23          MR. VANECK:  Yes.

24          THE COURT:  Okay.

25          MR. VANECK:  It's a leaseback.

1            THE COURT:  Okay.  So you sold the property at 24

2   Ebony Lane, Ivoryton, Connecticut to a trust, the Adams Family

3   Irrevocable Trust --

4            MR. VANECK:  Correct.

5            THE COURT:  -- in 2010 at the time there were

6   foreclosure actions pending against the property, correct?

7            MR. VANECK:  No.  There were no foreclosure actions.

8            THE COURT:  There were not?

9            MR. VANECK:  No, and the reason --

10           THE COURT:  Then why did you file bankruptcy?  What's

11  the bankruptcy going to do for you?  I'm trying to understand.

12           MR. VANECK:  Today?

13           THE COURT:  Yes.  Because you want to stay in the

14  property?

15           MR. VANECK:  No, that's a totally separate issue.  I

16  have -- my affairs have become so complex and the ongoing

17  attacks by the Hunt Leibert law firm over the last 10 years has

18  so totally ruined my credit, has so totally ruined my financial

19  affairs, so totally drained me.  I've spent hundreds of

20  thousands dollars in legal fees in dealing with these people

21  that I have to somehow come to an end to clarity in my own

22  personal life.  I'm 68 years old.

23           THE COURT:  But what can this bankruptcy court do for

24  you?

25           MR. VANECK:  It can discharge all debts against me.

1  That's what a Chapter 7 does.

2         THE COURT:  Well, haven't you already -- you've

3  already gotten a discharge in prior --

4         MR. VANECK:  No, I don't.

5         THE COURT:  -- cases, haven't you?

6         MR. VANECK:  No, I have a discharge from 1992.

7         THE COURT:  So what debt are you seeking to discharge

8  from the Hunt Leibert people represent?  You don't want them to

9  get a deficiency judgment against you?  I'm trying to

10 understand, sir, and I'm sorry, I just don't understand.  What

11 debt are you trying to discharge that has anything to do with

12 this creditor?

13        MR. VANECK:  I don't believe this creditor exists.

14 So I mean I don't know how you can have a debt to a non-

15 existent entity.

16        THE COURT:  Okay.  I'm just trying to get to

17 understand --

18        MR. VANECK:  All right.  Well, let --

19        THE COURT:  -- where we are.

20        MR. VANECK:  Le me back up and --

21        THE COURT:  Well, wait a minute.

22        MR. VANECK:  Can I paint the picture?

23        THE COURT:  What I'm trying to do is --

24        MR. VANECK:  Yeah.

25        THE COURT:  -- first of all I do think there's a

1 problem with the service of this, okay, of this motion, and I'm

2 going to -- I am going to revoke the order, the in rem order,

3 and I'm going to grant -- I'm going to direct Hunt Leibert to

4 file -- to provide me an order vacating the in rem order and

5 record that on the land records.

6          Now, the -- I'm going to give them an opportunity to

7 have a hearing on this, Mr. Vaneck, and you're going to be

8 here.  I mean it's going to be -- if you don't show up, you

9 know, the relief may enter against you.

10          I'm trying to understand what it is you're trying to

11 have help -- have this Court help you with.  When you say

12 they're a non-existent creditor, they're claiming and they've

13 put forth papers, so we're going to have to have an evidentiary

14 hearing, as to that somehow they have an interest in 24 Ebony

15 Lane, Ivoryton, Connecticut that they should be able to

16 foreclose.  That's what they're claiming.  You're now telling

17 me you don't own it, somebody else does, but you live there.

18 So they want -- obviously if they're going to try to get title

19 to that property, they don't want you to live there.  That

20 would be the -- that would be my -- that's what I would

21 conclude.  Okay.

22          And I believe somewhere in your papers or someone --

23 that there was a summary process trial about ready to go

24 forward the day you filed your petition here, that which if the

25 summary process trial was successful could have resulted in an

1   eviction order from you from that property, isn't that correct?

2           MR. VANECK:  No, I wouldn't categorize it that way.

3           THE COURT:  Well, what would you -- how would you

4   categorize it?

5           MR. VANECK:  All right.

6           THE COURT:  It's a summary process trial.

7           MR. VANECK:  Well, the --

8           THE COURT:  Summary process trial means somebody is

9   in possession of property that the other party says shouldn't

10  be and if they win they get a judgment to -- for ejectment.

11          MR. VANECK:  Well, all right, but --

12          THE COURT:  But that's state court.  So I'm -- so

13  here I go again, what is the bankruptcy court -- I can't do

14  anything about that and you can't just stay in here with a

15  stay.  You have to have a reason to be here.  So you need to

16  educate me as to why you should be here and so far I haven't

17  heard any reasons why.

18          MR. VANECK:  Well, let me brief that to you then.  My

19  affairs are so complicated and I'm also not very well today.

20  I've just come off a terrible flu, and if you'd like I'd be

21  happy to put that in writing.

22          THE COURT:  Well, we need to address this one way or

23  another.

24          MR. VANECK:  Sure.

25          THE COURT:  And I'll tell you, I don't know if you

1  saw any hearings before your hearing, but there -- the United

2  States Supreme Court has come out with decisions in the last

3  three years that say and certainly question the ability of a

4  bankruptcy court to do anything other than issues regarding the

5  bankruptcy case.  If you have issues that are state court

6  issues, Mr. Vaneck, which it appears that most of these are,

7  all of them are that I've seen to this point, I'm not going to

8  be able to help you anyway.  There's nothing I can do.  It all

9  has to go back to the state court.

10         While today I agree with you that the service of this

11  matter was not carried out in connection with the order of this

12  court and that's why that order is going to be vacated, but I'm

13  telling you, if you can't show me anything other than what

14  you've already said with regard to the ultimate relief that

15  they're seeking then they're going to get this order anyway,

16  most likely.  So while you'll get some time that's all you're

17  going to get.

18         This Court doesn't have jurisdiction to decide the

19  issues you're talking about.  The summary process, the

20  foreclosure, all the different appeal issues that you talked

21  about in state court, those are state court issues.  They're

22  Connecticut State Court issues.

23         So this Court isn't going to be able to do much for

24  you, it appears to me, and I haven't been shown anything other

25  than that at this point and I'm not sure what else you can show

1  me because while I can -- I certainly agree, I have not studied

2  everything in this case or any of your prior cases.  There was

3  -- as you know, there was a prior order barring you from filing

4  a case because of other cases that were filed to try to

5  apparently stop things in the state court.  Okay.

6          MR. VANECK:  No, I would really have to disagree with

7  that categorization, Judge.

8          THE COURT:  Okay.

9          MR. VANECK:  Yeah.

10          THE COURT:  Well, you can disagree with it, but --

11          MR. VANECK:  Well --

12          THE COURT:  -- that's what I've read.  Okay.  And so

13  my point is you're going to get some relief here today.  You're

14  going to get some time, but it's not going to be a lot of time.

15  And if you can't convince this Court of some -- if you can't

16  provide to this Court some information other than what you've

17  already provided on the ultimate relief that this creditor is

18  seeking, then we're -- you're going to be in the same place you

19  are today whenever that hearing is done.  Do you -- am I making

20  -- am I clear?

21          What I'm saying is I don't see any reason why their

22  substantive relief should be denied.  The reason it's going to

23  be vacated and set aside today is because they didn't follow

24  the service order required by this court, and that's correct.

25  You're correct in pointing that out.  They didn't do it, and

1  they've admitted they didn't do it.  So the result of that is

2  the order that entered was entered under the belief that

3  service was properly made, but service wasn't properly made.

4  So that order is going to be set aside.

5        We're then going to have a hearing.  If you can't

6  convince me -- if you can't show me something else that you

7  haven't already showed me, then they're going to -- another

8  order is going to enter.  So you're going to get some time, but

9  that's all it's going to be it appears to me, Mr. Vaneck.  So I

10  am -- I just want you to -- put you on notice of that.

11        I'm sorry that your affairs have been so difficult

12  and I'm sorry that it's been many, many years of issues that

13  you've had to address, I truly am, but this isn't the court

14  that's going to resolve those issues anyway and that's why I

15  asked you what -- why are you here, what is that you feel you

16  can obtain from this court.  And I'm not even sure there is

17  anything you can obtain because if what you're trying to do is

18  remain in possession of the property to rent there, there's

19  nothing I can do about that.  That's a state law issue.  You

20  got to go back to the Connecticut Superior Court and address

21  that.  So I just want to be very clear about that.  Do you have

22  any questions about what I've just said?

23        MR. VANECK:  No, none at all.

24        THE COURT:  Okay.

25        MR. VANECK:  However, my only observation is I think

1 we're kind of getting ahead of ourselves a little bit --

2        THE COURT:  Well, we may or may not be --

3        MR. VANECK:  -- you know.

4        THE COURT:  -- but I want you to be clearly on notice

5 --

6        MR. VANECK:  Oh, no.  Sure.

7        THE COURT:  -- of what -- I mean because of the fact

8 that, you know, you're complaining about notice and you have a

9 right to complain about notice in this instance, okay, I'm

10 agreeing with you, but I'm also trying to put you on notice

11 from the Court's perspective and what I've already reviewed and

12 what you've stated in your papers, I don't see how you defeat

13 the ultimate relief that this creditor is seeking and that's

14 what I want you to be aware of.  Okay.

15        And if I am -- if that is correct then when we come

16 back for this hearing the order that already entered and now is

17 going to be vacated probably will be reentered, and so then you

18 will be back in the state court, which in my opinion, given

19 what the United States Supreme Court has said about the

20 jurisdiction of bankruptcy courts on issues of state law, is

21 where you're going to have to resolve these issues.  Okay.  And

22 I don't say that -- you know, I don't say that with any feeling

23 either way.  It's just the fact.  That's what the supreme court

24 has said.  Foreclosure laws, summary process issues, those are

25 all issues of Connecticut State Law and the jurisdiction to

1  resolve those issues resides with either the Connecticut State

2  Court or the United States District Court, not with the United

3  States Bankruptcy Court.  Okay.

4          So what I'm going to do is I'm going to vacate -- I

5  think, counsel, you heard me previously, I'm going to ask your

6  office to submit an order vacating the existing order granting

7  in rem relief, which is ECF 22.  And I assume -- and I

8  shouldn't assume, but I'm going to ask you, is ECF 22, the in

9  rem order, already been recorded on the land records?

10         MR. POLLOCK:  As far as I'm aware, Your Honor, I

11  believe it has.  I can't say that for certain.

12         THE COURT:  All right.  Well, here's the -- what

13  you're going to have to do.  If it's been recorded on the land

14  records you have to record this new order on the land records.

15  If it hasn't been recorded on the land records then you don't

16  need to record it on the land records because it's not going to

17  affect the issue.  The whole in rem order issue is to put

18  everybody on notice on the land records, so you need to

19  determine that one way or another, and indicate in your order

20  vacating this order whether or not the original order was

21  recorded on the land records.

22         MR. POLLOCK:  Very good, Your Honor.

23         THE COURT:  Okay.

24         MR. POLLOCK:  Yes.

25         THE COURT:  Because if it was recorded on the land

1   records then you're going to be directed to file the vacated

2   order on the land records.  Okay.

3            MR. POLLOCK:  Very good, Your Honor.

4            THE COURT:  Okay.  Then we're going to have a hearing

5   and what -- Mr. Vaneck, this isn't going to be a trial on

6   whether or not DJL (sic) -- and I'm sorry, that may not be the

7   proper name, but --

8            MR. POLLO:  It's DLJ, Your Honor.

9            THE COURT:  -- DLJ is a valid entity and rather

10  Credit Suisse is -- I'm going to look at your arguments here,

11  DLJ sits at the Credit Suisse's offices.  That's all for the

12  state court, Mr. Vaneck, and that's the point I'm trying to

13  make with you.

14           All that would be tried here, all the hearing would

15  be here is whether or not they're entitled to relief from the

16  stay.  So they'll have to show the mortgage, the note, any

17  assignment, the fact that the debt hasn't been paid and the

18  fact that you're in possession of that property.  Okay.

19           They'd also have to show that -- about your prior

20  bankruptcies and the order that barred you from filing a case

21  until January 1 of this year, 2015.  And they'd also have to

22  present evidence about the summary process trial and that's

23  all.  We're not going to get into any evidence about whether or

24  not Credit Suisse is a sham, DJL is a sham.

25           You don't own the property anymore.  You've admitted

1  that.  You're in possession of the property pursuant to a lease

2  that your wife executed with this trust.  All you have -- the

3  only right you have with regard to that real property, if any,

4  under Connecticut Law, which is the court who'll decide it, is

5  to be in possession of that property.  You have no ownership

6  interest.  You've already said that.  If you have no ownership

7  interest then they get to go back to state court and do what

8  they can do, whatever that is, and you get to defend that in

9  state court.  Okay.

10         MR. VANECK:  Yeah.  May I, just for the record,

11  correct the Court's comment about the previous bar date

12  expiring in January 2015?  That --

13         THE COURT:  Was it December 31st, 2014?

14         MR. VANECK:  No, Your Honor, it was 2012.

15         THE COURT:  Well, I --

16         MR. VANECK:  You know, you're off --

17         THE COURT:  Okay.  Then that's my mistake.  I thought

18  it was December 31st or --

19         MR. VANECK:  It --

20         THE COURT:  -- I thought it was either December 31st,

21  2014 or January 1st, 2015.  So if I'm wrong I apologize, and

22  I'll make sure I get that right --

23         MR. VANECK:  Well --

24         THE COURT:  -- before our hearing.

25         MR. VANECK:  Well, just, you know, it's a very old

1  order.  It goes back to 2010 and --

2          THE COURT:  Okay.  All right.

3          MR. VANECK:  -- so --

4          THE COURT:  Then that's my mistake and I --

5          MR. VANECK:  -- two years from there would be 2012

6  and now we're in 2015.  So, you know, the suggestion is

7  constantly being made, implicitly or otherwise, by the Hunt

8  Leibert law firm that I keep running back to court in order to

9  mucky muck up their work, and -- but they've had this three-

10  year window after the bar date and a five-year window after the

11  previous case dissolved and, hey, you know, they haven't really

12  moved it forward.  They haven't gotten much traction now, have

13  they.  So we're back again --

14          THE COURT:  Well, if I'm --

15          MR. VANECK:  -- you know.

16          THE COURT:  -- incorrect I apologize.  I may have

17  looked at the wrong dates.  As I said to you --

18          MR. VANECK:  Yeah.

19          THE COURT:  -- I have not studied everything yet,

20  obviously.  I don't have the --

21          MR. VANECK:  Sure.

22          THE COURT:  -- working knowledge that you do, but I

23  will tell you we're going to -- we're going to have a hearing.

24  Okay.  And unless you can somehow show me something -- and I'm

25  not going to take any evidence about DJL or DLJ being a sham or

1    -- none of that.  It's whether or not they're entitled to get

2    relief from the stay with regard to the real property and all

3    -- do you -- an in rem order means that no matter who owns the

4    property, that any bankruptcy filing will not affect the

5    mortgagee's rights that they can exercise under state law and

6    that is why it has to go back to the state court, Mr. Vaneck,

7    ultimately.  Okay.

8           MR. VANECK:  Well, I'm a little puzzled though why

9    the Court would order that its orders be recorded on the land

10   records.

11          THE COURT:  Because the bankruptcy code requires it,

12   Mr. Vaneck and in --

13          MR. VANECK:  Well, if the property is --

14          THE COURT:  Congress decided that that was necessary

15   and they enacted a law and all the bankruptcy court can do is

16   carry out those laws --

17          MR. VANECK:  Well --

18          THE COURT:  -- so that's why.

19          MR. VANECK:  Well, that's pretty clear.  Yeah.

20          THE COURT:  Good.  I'm glad it's clear.  Okay.  So

21   we're going to set a new hearing date on this and everybody is

22   on notice now.  Mr. Vaneck, you're -- you are now going to be

23   on notice that there's going to be this hearing.  Okay.  So

24   there's not going to be a new notice of hearing issued.

25   Counsel isn't going to have to serve you with a new notice of

1  hearing.

2        We are here now and I -- this Court is scheduling a

3  hearing on their amended motion -- the amended motion of DLJ

4  for equitable relief and in rem order, whatever that motion --

5  I'm sorry.  Let me get it -- let me clarify it for the record

6  what the motion actually is and let me make sure I know what

7  the ECF motion number is so that there's no confusion.  Okay.

8  And, counsel, please correct me if you think I'm wrong, but the

9  motion for relief from stay regarding 24 Ebony Lane, Essex,

10 Connecticut, that's what the docket entry says, is Docket ID

11 Number 12, and it was filed on January 12th, 2015.  The motion

12 to expedite the hearing in connection with ECF 12 was Docket ID

13 -- it was ECF Number 14.  Okay.

14        So what we're going to have a hearing on when I set

15 this hearing date is the motion for relief from stay filed by

16 DLJ Mortgage Capital, Inc., dated January 12th, 2015, is that

17 correct?

18        MR. POLLOCK:  May I just check, Your Honor?

19        THE COURT:  Sure.

20        MR. POLLOCK:  Thank you, Your Honor.

21        THE COURT:  Take your time.

22        MR. POLLOCK:  Yes, Your Honor.  I believe that is

23 correct.

24        THE COURT:  And I've looked at the docket and there's

25 no other motion, counsel, so I'm sure that's accurate.  Okay.

1  I've made sure.

2         Now, Mr. Vaneck, the motion for relief from stay

3  dated January 12th, 2015, you've now received that on January

4  28th, 2016 (sic) in that UPS package, correct?

5         MR. VANECK:  Yes, Your Honor.

6         THE COURT:  Okay.  So that's the motion and your

7  objection is what we're going to have a hearing on.  Okay.  But

8  I'm telling you that in your objection what I will not

9  entertain at that hearing are any arguments with regard to

10  whether or not DLJ is a sham entity and whether or not Credit

11  Suisse is convicted of criminal enterprise and those two issues

12  are -- you have to argue those in the state court, sir.

13  They're not arguable here.  Okay.

14         So I'm going to set a hearing date.  Today is March

15  25th.  I am going to set a hearing date of April 29th, 2015 at

16  11:30 a.m. for the hearing on the motion for relief from stay

17  in the -- filed by DLJ Mortgage Capital, Inc., ECF 12, and the

18  objection -- I just have to look at the number, Mr. Van Vaneck,

19  hold on one second -- the objection of Mr. Vaneck to the motion

20  for relief from stay, which is ECF Number 20, which was filed

21  on January 16, 2015.

22         So the issues, Mr. Vaneck, you raised in connection

23  with the sham status of DLJ and Credit Suisse being a criminal

24  enterprise, that's not going to be heard.  All what's only

25  going to be heard is the relief from stay, okay, and your

1   objection that you filed on the 16th of January.

2          Now, in your objection you say that -- you say things

3   that you claim are the facts that DLJ has recited in support of

4   its claim are incorrect, so you need to have evidence of why

5   it's incorrect, okay, in order for me to find in your favor.

6   If you don't have evidence of that then the likelihood is I'm

7   not going to find in your favor.  Okay.  And then you'll have

8   to go back to the state court and resolve these issues in the

9   state court.  Okay.

10         Now, that doesn't mean you couldn't get a discharge

11  of your debts still here in this Chapter 7 case.  I haven't

12  looked it at yet.  I don't know what your debts are.  I didn't

13  look at them.  But that doesn't mean, even if you had to go

14  back to state court and deal with this issue, that any other

15  debts you have you couldn't get discharged.  You possibly

16  could.  I don't know.  I haven't looked.  But this is an issue

17  limited to this creditor.  Okay.

18         MR. VANECK:  Yeah, well, as far as the other matters

19  are concerned we'll just let the chips fall where they may.

20  Right.  You know, that'll work itself out over time.

21         I am a little troubled with the Court's conclusion,

22  which I think was perhaps a bit preliminary on your part, that

23  the 2010 bar order was a -- flowed from anything that these

24  people did, and in actuality if the Court were to look at it,

25  it actually came from a motion by the U.S. Trustee's Office --

1          THE COURT:  Okay.

2          MR. VANECK:  -- and it was on different issues.

3          THE COURT:  Okay.  I didn't conclude -- as a matter

4  of fact I think --

5          MR. VANECK:  Okay.  Thank you.

6          THE COURT:  -- I said, ultimately that if I am wrong

7  I apologize because I --

8          MR. VANECK:  Yeah.

9          THE COURT:  -- haven't studied yet.

10          MR. VANECK:  Yeah.

11          THE COURT:  So I haven't made a conclusion about the

12  bar order.

13          MR. VANECK:  Yeah.

14          THE COURT:  Okay.  But there -- I know there was a

15  bar order.  I'll have to go back and study why there was one

16  and who brought on the motion that resulted in the bar order.

17          MR. VANECK:  Well, yeah --

18          THE COURT:  Okay.

19          MR. VANECK:  -- at this point it's water under the

20  bridge anyway.  It's five years old, but, you know --

21          THE COURT:  I was under --

22          MR. VANECK:  Yeah.

23          THE COURT:  -- apparently the mistaken impression

24  that the bar was in place until December 31st, 2014.  So --

25          MR. VANECK:  No, no.  It's just three years ago that

1  that ran out.

2          THE COURT:  Okay.  Well, I'll take a look --

3          MR. VANECK:  It's five years old.

4          THE COURT:  I'll take a look at it.

5          MR. VANECK:  Yeah.

6          THE COURT:  It doesn't --

7          MR. VANECK:  Yeah.

8          THE COURT:  It's water under the bridge in some

9  respects, absolutely.  If they're going to raise an issue

10 though to say that you've filed your case in order to stop them

11 from trying to obtain title to that property, then they'll have

12 the right to tell me about how many cases you've filed, just so

13 you know that.

14         MR. VANECK:  Sure, and I have --

15         THE COURT:  And you have the right to refute it.

16         MR. VANECK:  And I shall.

17         THE COURT:  Well, and there you go.  So we will have

18 a hearing on April 29th at 11:30 a.m. on ECF 12, the motion for

19 relief from stay, and ECF -- now I forget what I said the

20 number was -- 20 --

21         MR. VANECK:  Twenty, Your Honor.

22         THE COURT:  -- 20, thank you -- on your objection,

23 Mr. Vaneck.  Okay.  Does anyone else have any other questions?

24         MR. POLLOCK:  Nothing from DLJ, Your Honor.

25         THE COURT:  Okay.  Thank you.  And you'll submit that

1   order in the next day or two, please?

2           MR. POLLOCK:  Absolutely, Your Honor.

3           THE COURT:  Okay.  Thank you.  Mr. Vaneck, any other

4   questions?

5           MR. VANECK:  No.  I think you've pretty much wrapped

6   it up.

7           THE COURT:  Okay.  Great.

8           MR. VANECK:  Thank you very much.

9           THE COURT:  Then we'll take -- that is all the

10  matters on today's calendar, so court will be adjourned.

11          COURTROOM DEPUTY:  All rise.  The court is adjourned.

12                        * * * * *

13                 **C E R T I F I C A T I O N**

14          I, COLETTE MEHESKI, court approved transcriber,

15  certify that the foregoing is a correct transcript from the

16  official electronic sound recording of the proceedings in the

17  above-entitled matter, and to the best of my ability.

18

19

20  /s/ Colette Meheski

21  COLETTE MEHESKI

22  J&J COURT TRANSCRIBERS, INC.   DATE:   April 20, 2015

23

24